Okay, the next case before the court is Schoeller-Bleckmann v. Churchill Drilling on appeal from the Southern District of Texas. Case number 172137. Mr. Cabello, you want five minutes for rebuttal? Yes, Your Honor. Okay. Your Honor, we do have some demonstratives. Before we get started, we have some hard copies for the court. If we may, we'd like to pass those to you. Up to you, Your Honor. Are you okay with that? Yes. Okay. Good morning, Your Honor. May it please the court. Churchill submits that the district court abused its discretion and made several reversible errors, both in clearly erroneous assessment of critical evidence and in reaching erroneous legal conclusions. Both either together or separately require reversal by this court. Octane Fitness required the district court to consider the totality of circumstances in determining whether the case was exceptional. The trial court examined issues in isolation rather than using the totality test. You point to a lot of things that you think that the trial court didn't consider, but the trial court says that the only thing you focused on was your complaints about Dr. Hofstadter's testimony. And interestingly, when you go to the appendix, that's the only portion of your motion that you include in the appendix. So should we assume that the trial court is correct that other than that focus, there was no development of these issues below? No, Your Honor. The issues were quite well developed. First of all, with respect to Mr. Lee's testimony, he's the inventor of the 397 patent. He testified at a deposition. He directly read the Asserted Claim 13 directly onto his own prior art. That's the Lee prior art with the 255 patent. That was fully developed. It was briefed to the court. And we believe that that was a point in time when Sheldon Blackman should have dismissed its case. There's correspondence in the record that shows that at each inflection point in this case, when it became apparent that Sheldon's case had turned south, we were asking them to dismiss the case. Right, but I'm still trying to get to the question of what did you really develop for the trial court below in terms of the issues on which you wanted the trial court to focus. And the trial court said that you didn't really develop anything below. And then you've got a motion for these filed under seal, and you don't submit the entirety of the motion in your record. So how am I supposed to figure out what you argued to the district court and didn't argue to the district court? Your Honor, the fee motion is at Appendix 2343 through 2391. But not in its entirety. Your Honor, there's a substantial part of that fee motion. I believe that it is certainly parts of it are redacted, but a good part of it is there. What is redacted are the fees that each party charged their respective clients. But by and large, the fee motion is in the record. Your Honor, so you started by saying something about how this is Judge Atlas. Yes, Your Honor. Judge Atlas, you said, looked at each of the items in isolation, items being grievances that you raised, but not the totality of the circumstances. I'm not quite sure what you think the difference is. I thought she went through each of them and said, this really wasn't exceptional, this wasn't exceptional, this wasn't exceptional. What is it that she didn't do to say that a whole lot of non-exceptional things could together add up to something exceptional? I think, giving the lower court's opinion, a fair reading, she came to the conclusion twice that this case was not exceptional, and that Shiller Blackmun could continue to press its case because of the presumption of validity, and because the le prior art was cited on the face of the patent. Suppose I do not read the opinion to place that kind of reliance on the presumption coming out, but rather on the assessment of each of the things that you recited, namely whether the claim construction position and the relevant passage on whatever the column is in the patent and the specification about the key term, while they ended up being wrong about it, it really wasn't an unreasonable construction, and something somewhat similar about exactly what Mr. or Dr. Lee testified. Well, I think we have to look at the record and look at the facts, and to that end, Your Honor, I would say that her assessment of the evidence was then clearly erroneous. Mr. Lee's testimony was unequivocal. We went element by element of the asserted claim 13 and read it right on to the le prior art. There's no ambiguity. There's no dispute about that. He got wrapped around later about whether a deformable ball was a deformable activator. He said no, and Judge Atlas then seized on that and said, well, gee whiz, a deformable activator can't be a ball. That was not the center of the dispute, Your Honor. The center of the dispute was whether the ball dart taught in the 397 patent read directly on to the prior art, and if I may, Your Honor, turn to the first demonstrative, which is the ball dart passage. We'll see right here that the 397 patent says the ball dart combination is, in essence, a ball and a dart. We took the prior art, the 255 patent, and said, well, that's a ball and a dart, and then if you look at the teachings of the 255 patent, that is, Lee's prior art, that teaching says the assembly comprises a large deformable ball, that's the blue, a weight attached to the ball. The weight is operative to assist the movement of the assembly, and in essence, we have the teachings in the 397 patent read directly on to the 255. Does your position- And then when you look at the- I think once I start talking, you need to- Yes, Your Honor, my apologies. Does your position on the claim construction come down to the proposition that it is not just wrong, but unreasonable to read the phrase ball-like proportion not to, in fact, encompass a ball? Your Honor, I believe that that was settled once before, before this court. Well, what we settled there was whether that was correct or not. Yes, Your Honor. But whether we didn't get to settle, because it wasn't before us, whether the contention was actually objectively unreasonable that ball-like would not include a ball sitting on top of a dart, as opposed to something with a portion of a surface that is somewhat spherical. Your Honor, I believe that that reading would be objectively unreasonable. I mean, if you have a description of a ball-like, that clearly is a genus or a genus of the species, the ball. And in fact, when you look at the claims of the 397 patent, Claim 13 claims a deformable activator, and Claim 17 then goes on to define that deformable activator as a ball-dart combination. And so if Claim 13 is broader than Claim 17, it must, by definition, encompass that ball-dart in the description of the genus ball-like. With respect to- Judge Torano's correct, though. Your arguments, and even now looking back at what you included, I think it was correct that you virtually said nothing about any validity position other than objecting to this claim construction, or saying that your claim construction is so reasonable that theirs is necessarily objectively unreasonable. But that's the whole focus of your motion. Your Honor, I would disagree. There were a lot more items covered in our briefing and certainly in our motion for fees. One was the- In a paragraph or two, but not anything meaningful. Your whole attack is on Dr. Hofstadter. Your Honor, again, I would respectfully disagree. Yes, we did attack Dr. Hofstadter's and the lower court's findings with respect to Dr. Hofstadter. Dr. Hofstadter took some very circular, very tenuous positions with respect to a deformable activator. There was a lot of circular reasoning. He put forward a sworn expert report where he said, I looked at the file history and I looked at the prior art. When I took his deposition, he said he hadn't looked at the file history and he had not looked at the prior art. And yet the court went out of its way to give Dr. Hofstadter the benefit of a doubt. I asked him very specifically, do you have any doubt in your mind that you failed to look at the prior art? He says, no doubt in my mind. So there was no basis at all for the court to give Dr. Hofstadter the benefit of a doubt when he had testified clearly. But what you're worrying about is what the claim construction is, right? Not whether or not the prior art reads on this particular figure. Yes, Your Honor, and if I may, I will turn to the claim construction. But part of the argument here is that this case should be exceptional because the inventor read the asserted claim directly on the prior art. And Schroeder Blackman, we wrote to him and said, please dismiss your case. And yet they decided to press on with their case. We don't believe that the trial court understood the significance of Mr. Lee's testimony. With respect... Let me ask you, you said that every step of the way you gave them a chance to back out. But one of the things I was shocked at was the letter that you sent saying, you can settle this if you pay our fees for the IPR. And those are not reversible fees. So why should they be required to pay the fees for something that you chose to institute? Your Honor, we have taken the position, well, first of all, Your Honor, letters such as that are always an invitation to negotiate. We received no response. But secondly, Your Honor, we believe that we took the case to the PTAB because it was a more convenient, more efficient way to resolve the dispute. It was an easier way to get something invalidated because their standards are fundamentally different. Your Honor, I agree that the standards are different. But it was a much more expeditious and certainly a lot more economical. This, my client spent $500,000 at the trial court level. And we just barely got through claim construction. We spent $300,000 at the PTAB and got the patent invalidated. But a lot of the money you spent at the trial court level was in connection with the fee motion, right? No, Your Honor. That was, those numbers were totaled before the fee motion. Those were leading up to the fee motion and did not include the fee motion. Did a lot of that involve your somewhat, if I think I'm remembering right, extensive claim construction submission? There was extensive. Which you eventually withdrew nearly the entirety of? Your Honor, we did have an extensive claim construction proceeding. But it was because Schiller kept changing its proposed claim construction. And if I may, I'd like to turn to that brief. You didn't argue that that was objectively unreasonable and that that was a basis for finding an exceptional case? Your Honor, the position that we took is that the proffered claim construction was subjectively unreasonable. In light of the specification because it didn't give the specification its full breadth. It attempted to limit the claim and the claim construction solely to figures 8, 9, 9A, and 9B. That is a very specific form of a deformable activator rather than what was taught in the Baldart passage which we just showed the court. And that is you have to give the specifications full breadth and you're attempting to read into the claim construction limitations that it's unfair to read into it. This court has been very clear that you cannot take limitations in the specification and read them into the claim construction. Okay. You're down to two minutes. Do you want to save any of it? Just very briefly, Your Honor. Okay. First of all, Your Honor, with respect to the construction, this term unitary device came out of nowhere. We don't know where exactly it came from. It's certainly not in the specification. Never is unitary device mentioned in the specification. And yet we continue to see it. We continue to see changes to the proposed construction. We believe that those are unreasonable. We cited those in our reply brief. We've asked numerous times what a unitary device is. Unitary device reads right on the 255 Act. That is a unitary device. It's one device. And yet we still kept talking in circles. So I'm optimistic that Mr. Noland at some point will clarify this issue. Perhaps he'll enlighten this court. Can I ask you this question? Are you aware of any case law involving patents and their use of the word unitary? No, Your Honor, I'm not. I'll reserve the remainder of my time. I'll give you a minute and a half. Thank you, Your Honor. Good morning, Your Honors. If it pleases the court, the district court did an in-depth review of the evidence. What we are hearing here is a request for this court to undertake a de novo review. The district court looked at all of the arguments that Churchill presented below. In her opinion, Judge Atlas explained that not only did she look at it separately, but she specifically says these matters separately or collectively established that this was not an exceptional case warranting fees, and that's at Appendix 7 through 8. In addition, when you read the case, when you read the opinion, Judge Atlas makes clear that not only did she consider all the evidence that was presented in the motion for fees, but she went back and she read all of the claim construction papers to support these positions and concluded the positions that were taken by Shola Blechman were not unreasonable. Okay, so just focus on that one in particular, not that chart, but the, what is it, the ball dark passage? Is that the language people are using here? Why is your position at least objectively reasonable, even though I guess we rejected it a couple of years ago? Well, what I think this court had said when it came to the PTAB, which was under a different standard, but it said it appears that the ball may be a species of ball-like. Why our position was not unreasonable from a claim construction perspective is first. Their expert, which you will see very few discussions of this in any of their papers, their expert, Dr. Bedley, acknowledged that the formable activator doesn't have a customary meaning. He had never heard of it before he got into this case. It was in none of its background information. So under Indicon v. Facebook 824 F3rd 1352-1357, this court says, you should not construe a claim that doesn't have a customary meaning any broader than the specification. The specification is clear throughout that it talks about a deformable activator. It points to the deformable activator of figures 8, 9, 9A, and 9B. It talks about ball-like portion, and when it talks about ball-like portion, it points to item 51, which is a ring. You read the specification as a whole. This is one selection out of the specification. It uses the term ball-like. We believe it was reasonable and certainly reasonable for the court to conclude that it was not an unreasonable position to take that ball-like is different than ball. Later on, it uses quotes around ball, suggesting a departure from its ordinary meaning. It is discussing the deformable activator as a whole. And the specification, when you look at it, it is not a ball attached to a weight. And the counsel has pointed to apparent admissions by Mr. Lee. But again, as the district... Can I just ask? I mean, it seems to me everything that you said has a certain force to it if one is thinking about the term ball-like. Explain how that has force if you focus on the name given to this thing. Well, not the name, but a ball-dart combination. Forget about ball-like for a minute. Ball-dart combination, in your view, can reasonably be understood to exclude a ball sitting on top of a dart. Well, I think when... Remember, the claim says deformable activator. That's the term that we're using. The claim wasn't talking about... That's what we were attempting to construe. And so when we looked at the entirety of the specification, we thought the import of those other parts of the ball-like passage that we've been talking about suggested that this is just a consistency in teaching with what was talked about as a deformable activator. And you can see when it talks about the ball-like and it's describing the deformable activator, it is not a ball. It is a ring. It is something different. And another point that counsel made is, well, I gave the... I asked the inventor whether the 255 patent taught each limitation of the claim. And he pointed to some testimony. But there's also other testimony at Appendix 3207, transcript 298 to 300, that the inventor explains that the ball-weight combination of the 255 is different than a deformable activator. And, in fact, it had problems because it breaks apart or has problems. And if you look at Appendix 2520, you'll see that actual issue. The important thing is Judge Atlas said, I have read the entirety of the inventor's testimony, and I've looked at this. And Churchill attempts to take it in isolation, but when you read it as a whole, it doesn't support the conclusion that this case is exceptional. In every instance, Churchill wants to focus on a few statements by an inventor. Churchill wants to focus on one part of the specification. But read as a whole, the court found that what Scholar-Blackman did was reasonable. And, more importantly, there's nothing in the record that shows that the court abused its discretion. The district court is in the best position holistically to look at these issues. They have the entire record before them. Everybody who is defending a judgment of a tribunal to which deference is owed can recite generalities about process. And it's true that if a tribunal just didn't look at anything, that would be a problem. But the potential problems don't end there. You also have to look, as a reviewing court, on what was done with each of the things that was looked at, and make sure that each one of those things falls into a range of reasonableness or discretion. So the fact that everything was looked at, maybe you're 50% of the way there, but there's a remaining 50%. Why is the claim construction reasonable? Why is the testimony by Mr. Lee not – why is that sort of explainable in a way that favors you? It's those specifics that are part of what matters here. Absolutely, Your Honor. And to those specifics, like I said, we've pointed to Lee's other testimony where he said the 255 is different, and then a deformable activator. How? How is it different? Because the deformable activator in the 397 has a ring attached to it, so it stays. One of the issues that became – why Unitary became in is because their expert, Mr. Medley, suggested, well, this could break apart. Even the deformable activator of the 397 can even break apart because it used a term, the ring can shear through. Even though he admitted that's problematic if it breaks apart. The deformable activator, like we said, when the term doesn't have a customary meaning, you look at the spec. If you read the spec, the only thing that's ever discussed as a deformable activator is the ring attached to this configuration. It is a different configuration than what was in the 255 patent. Well, the only specific embodiment is shown, but that passage on whatever that column is starts with, right, deformable activator, preferably, comprises, and the first thing it says is a ball-dart combination. And then it goes on to say in which a ball-like thing. Yes, but your position, I gather, comes down to the proposition that in part because of the ball-like and in part because of the embodiments, that it is reasonable, even if ultimately incorrect, to say that the ball-dart combination language doesn't really include a ball sitting on top of a dart. Yes, and in addition, not only does it include this, but part of the intrinsic record here is the 255 patent itself. The examiner identified the 255 patent during the first office action. Claim 15 was pending and became Claim 13. The examiner allowed it over the 255, allowed it over this figure that showed a ball attached to a weight. What art the examiner considers is also part of the intrinsic record. So when you read the intrinsic record, which includes the specification, includes the descriptions, includes the use of term of ball-like here, and then showing that the ball-like is a ring, uses quotes around ball. Then you add to that that the examiner had that reference in front of it when it was reviewing it. That's not necessarily the end of the inquiry, right? We've often seen references that the examiner had in front of them, and we say they don't support the ultimate claim construction or validity determination. Absolutely. It may not be the end of the inquiry, but what it comes down to is it shows that the district court had evidence and support to come to the conclusion that it came to, that our position on claim construction was reasonable. Was the 255 specifically a subject of discussion by the examiner, or just we know from the listings of references that it was in front of? The Claim 15, which issued as Claim 13, was a first office action allowance, so there was no discussion of any prior art with respect to that. That goes to one of the other points where counsel suggested that he had asked, in Dr. Hofstadter's position, he said, I've considered the file history. He considered the file history because he was aware that it was a first office action allowance, that there was no discussion about Claim 13 or 15 during the prosecution, and the fact that the 255 was on the face of the patent. So as the district court made a factual finding, his testimony was absolutely consistent. She disagreed with the interpretation that Churchill concluded that Mr. Hofstadter, Dr. Hofstadter somehow was telling untruths to the district court or untruths in any of its testimony. And again, the question is, she had that evidence before her. Was it abuse of her discretion to find out, find everything that Churchill, Blackburn had done, either separately or collectively, was reasonable? And again, I can't just- Can I ask you about one other thing? Sure. And I'm not going to remember the specifics, but I think one of Churchill's charges has to do with an asserted inconsistency between what you said in Europe and what you said here. And it's true that there's a general principle that, over the years, this court has articulated that says be very, very careful about interpreting statements made in different legal fora outside the United States. But what is the explanation for why whatever these two statements are aren't just squarely inconsistent? Well, first of all, if you look at what happened in Europe, is they more specifically claimed the deformable activator to describe it more consistently with the disclosure or the figures in the patent. And then they said this is different than the deformable activator, say, in the form of a ball, which the patent makes. If you read the spec, it makes a distinction between that. Why it's important, why it has to be done that way in Europe, is because if you look at Appendix 3486, it's Section 4.2, the European Patent Office makes you write the claims more specifically because only the claims of the patent are going to be translated into all of the languages in Europe. And we are here in the U.S. where sometimes if the claim, deformable activator doesn't have a customary meaning, we can look to the specification to truly understand that it's more difficult for that to be done in Europe because the specification may not be in the language. So what we thought and what we presented to the district court is because of the different standards, because of the different requirements, because what this court has said in AIA Engineering 667F3R1264R1279, that you have to be leery of giving too much weight to those statements. But what's important here is the district court didn't ignore that evidence. She addressed Churchill's argument on it, and she came to her own conclusion as to how it supported their position. And again, there's nothing in the record that says she abused her discretion in coming to that conclusion. Overall, if you look at this, if you look at the testimony that the district court had from their own expert, the entirety of the testimony that was there for Mr. Lee, if you look at all of the evidence on Dr. Hofstad, if you look at the disclosure of the specification in a whole, if you look at everything the district court did here, there's nothing to suggest that she abused her discretion. She wrote a very detailed opinion. She discussed the presumption of validity, but only to note that she didn't change the standard of above clear and convincing. She noted, as many cases from this court note, that when the reference has been before the patent office, although the burden doesn't change, it may go to the weight of the evidence. She was right to rely upon that weight. She was right to analyze all the other evidence as she did. And despite what Churchill wants to say, either we're just not accepting what she said, because again, she said that she considered these matters separately and collectively, and they just did not come to the octane fitness standard, which says it's the rare case where that stands out. And in fact, she cited Weston Falcon at district court case at 12 of the appendix and Hockey Line at 8 through 9. And we've also cited district court cases credit acceptance and creative powers, very similar issues where patents were held to be invalid or other issues. And she found that these cases were more consistent with what was happening here, and it certainly was not a case that stood out as required by the octane fitness standard. Thank you. Unless you have any other questions, I'll sit down. Thank you, Your Honors. You have to sit down. The time's up. Your Honor, first of all, if I may, with respect to separately and collectively, to a certain extent, Your Honor, I would submit that that is boilerplate. We have to look at the opinion and look at the fact that the totality of the circumstances, that the facts and the law were not examined under the totality of circumstances. Is it your position that no single thing has to be objectively unreasonable as long as a whole host of things push the envelope? Yes, Your Honor, I think you have to look at each one separately, analyze it, and then look at it collectively and ask yourself, looking at all of these issues, does this case stand out from all others? We believe this case does. Your Honor, if I may, with respect to the allowance at appendix 3345, the examiner merely made the note, the prior art made of record and not relied upon is considered pertinent to the applicant's disclosure. That was it with respect to Lee Prior Art 255. With respect to the EPO admission that is found at appendix 2653, it is clear and unequivocal. The applicant says, compared to a deformable activator in the form of an activation ball, a deformable ring may improve the characteristics of the deformable activator. Very clear distinction between the activation ball being, or an admission that the deformable activator is an activation ball. I'd call the court's attention to the fact that we continue to hear about the importance of a ring. There is no mention of a ring. This court previously, in the PTAB decision, said the ring was never claimed. We agree. It was never claimed and yet we continue to hear about a ring. Let me just turn very briefly to the inventor's testimony because we've heard all sorts of things about the inventor's testimony. Slide three. I'll give you another 30 seconds because we don't have time. Testify clearly. A deformable activator is a mechanism that can be dropped down the drill string to engage a seat to allow the activation of a sleeve and be blown through the seat to deactivate mode. I ask you very specifically, does figure six, is that a deformable activator? Unequivocal, yes. Thank you, Your Honor. Okay, thank you. We'd ask that the court reverse and render or reverse the further findings. Thank you. The cases will be submitted. Thank you. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.